In re Thomas HANDY and
Judith Handy, Debtors.

Gordon L. KIESTER, Trustee, Plaintiff,

v.

Thomas HANDY, Judith Handy and
Mark Handy, Defendants.

Bankruptcy No. 93–2363–8P7.
Adv. No. 93–593.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Feb. 17, 1994.

**356**

Gordon Kiester, Tampa, FL, for plaintiff.

Defendants—Pro Se, Sarasota, FL

Thomas Handy, Judith Handy and Mark Handy, pro se.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the matter under consideration is a two count Complaint asserting two claims by Gordon L. Kiester, Trustee of the estate of Thomas Handy and Judith Handy (Debtors). The Complaint filed by the Trustee in Count I challenges the right of the Debtors to a general bankruptcy discharge based on § 727(a)(2)(A) and the claim in Count II is a claim against Mark Handy, the son of the Debtors, in which the Trustee seeks to recover from Mark Handy the sums of $5,000 and $40,355.12, respectively, as fraudulent transfers pursuant to § 548(a)(2)(A). At the final evidentiary hearing at which time the Debtors and Mark Handy appeared in proper person, the evidence presented revealed the following:

Prior to moving to Florida, the Debtors and Mark Handy, their son, lived in Connecticut. The Debtor, Thomas Handy, worked as a commission salesman, together with Mark, for a corporation referred to only as Sysco. It is without dispute that while living in Connecticut, on September 1, 1991, Thomas Handy entered into an agreement with Mark Handy whereby he agreed to share all commissions earned on a 50/50 basis. (Debtor's Exh. No. 1) According to the Form 1040's filed with the IRS (Trustee's Composite Exh. No. 4), in the year 1991 Thomas Handy earned $34,000 as commission and Mark Handy earned $4,600 and in the year 1992 Thomas Handy earned $48,600 and Mark Handy earned $7,196.

Sometime in 1992, Mrs. Handy sold her home in Connecticut and realized approximately $170,000. After having settled in Florida, Thomas Handy and Mark Handy obtained a contract with Central Florida Finer Foods (Central Florida). Under this contract, Thomas Handy was to receive a $1,200 per week draw against earned commissions and Mark Handy a $200 per week draw against earned commissions.

Upon arrival in Florida, the Debtors opened a joint checking account at Sun Bank and Judith Handy maintained a savings and checking account at Barnett Bank. It is without dispute that all monies obtained by her from the sale of her home were deposited in part in the checking account and part in the savings account maintained at Barnett. On December 11, 1992, Mrs. Handy transferred the sum of $5,000 to Mark Handy drawn on the Barnett checking account. Although the Trustee alleges that the Debtors transferred $40,355.12 to Mark Handy, there is no documentary evidence to establish this transfer. The only document in evidence is a copy of a printout entitled "Statement" by Barnett Bank, which states that on December 16, 1993 the sum of $40,355.12 was deposited into an account which is titled as follows:

Mark P. Handy ITF
Jeffrey T. Handy and Christine A. Handy and Thomas L. Handy and Judith A. Handy
2376 Seattle Slew Drive
Sarasota, Florida 34240–8888

It is without dispute that at the time these transactions took place, there was a suit pending in the Circuit Court of the Twelfth Judicial Circuit against the Debtors by Angela Westley, although the final judgment against the Debtors was not entered until after the funds were paid to Mark Handy. (Trustee's Exh. No. 1). The judgment was amended nunc pro tunc reducing the amount of the judgment to $17,096.00.

Basically these are the facts established at the final evidentiary hearing upon which it is the Trustee's contention, first, that the Debtors are not entitled to a general bankruptcy discharge and, second that the Trustee is entitled to a money judgment against the Defendant, Mark Handy.

 Before considering the two claims asserted by the Trustee, it should be pointed out that the provisions dealing with the discharge set forth in § 727 are remedial and, therefore, should be liberally construed in favor of the Debtors and against the party challenging their right to a discharge. As noted by the Supreme Court in the case of *Lines v. Frederick*, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970), the concept of a fresh start is essential in the bankruptcy process, which provides the Debtors a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt. It is equally true, however, that the burden of proof is no longer clear and convincing but mere preponderance. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

 Considering the claim set forth in Count I first, that is the claim based on § 727(a)(2)(A), it is the burden of the objecting party to establish that the Debtor did within one year of the commencement of the case, with intent to hinder, delay or defraud a creditor, transfer property of the estate. Considering this record in light of the provisions of this Section, it is evident that Thomas Handy did not transfer anything whatsoever to his son, Mark Handy, and if there was a transfer it was transferred by Mrs. Handy. The $5,000 was drawn on her bank account, it was part of the proceeds she obtained from selling her home and the monies were never jointly owned funds and for this reason it is evident that the claim based on § 727(a)(2) against Thomas Handy cannot be sustained. Considering the claim against Mrs. Handy, it is clear that she did in fact pay within one year the sum of $5,000 to her son. Thus, the question still remains whether or not the payment of the $5,000 to her son was made with the specific intent to hinder, delay or defraud creditors and whether or not this record would sustain a viable claim under § 727(a)(2)(A) against her. The record in this case equally supports the contention advanced by the Debtors that this payment was in fact pursuant to an agreement between Thomas Handy and his son to share in the commissions earned by them together and also consistent with the claim of the Plaintiff that it was made while the lawsuit was already pending against not only Thomas Handy but also Mrs. Handy and, therefore, was done with the requisite intent to hinder or delay a creditor. This being the case, this Court is satisfied that the Plaintiff failed to carry the burden required by law to establish a viable claim under this Section and for this reason the claim against Mrs. Handy set forth in Count I of the Complaint should be dismissed.

 Concerning the alleged payment of $40,355.12, the only evidence in this record is a statement of Barnett that on December 15, 1992, there was a deposit made in that amount. It is noteworthy, however, that the account in which this sum was deposited was an account maintained by Mark P. Handy ITF, Jeffrey T. Handy and Christine A. Handy, the brother and sister of Mark Handy, Thomas Handy, his father, and most importantly, Judith Handy, his mother. There is nothing in this record which establishes by documentary evidence that this sum was ever removed from that account in which theoretically Mrs. Handy holds a beneficial interest. This being the case, this record is woefully inadequate to establish a transfer of this sum by Mrs. Handy to her son. Based on the foregoing, this Court is satisfied that the claim based on § 727(a)(2)(A) against both Mr. and Mrs. Handy have not been established with the requisite degree of proof and, therefore, cannot be sustained.

This leaves for consideration the claim set forth in Count II which is based on § 548 of the Bankruptcy Code which authorized the Trustee to recover any transfer within one year prior to the commencement of the case if the Debtor received less than reasonable equivalent value in exchange for the transfer, § 548(a)(2)(A) or at the time the Debtor was insolvent, § 548(a)(2)(B)(i). It is evident that before a transfer could be avoided under this Section, it is the burden of the Trustee to establish (1) a transfer; (2) within one year; (3) for which the Debtor received less than reasonable equivalent value. There is no question that Mrs. Handy did in fact transfer the sum of $5,000 to Mark Handy on December 11, 1992. It is equally clear from this record that she received nothing of value in return and Mark Handy never owed anything to her and furnished no consideration for this transfer. The fact that Thomas Handy might have owed to Mark Handy for his share of commission does not mean that Mrs. Handy was liable for that obligation if one still existed. It is equally without dispute that at the time this transfer occurred, she was insolvent which clearly appears from their schedules, of which this Court takes judicial notice, indicating that she had outstanding unsecured claims in excess of $100,000 with no assets of any consequence near to that value. This being the case, this Court is satisfied that the Trustee did establish with the requisite degree of proof that the payment of $5,000 was in fact voidable under § 548(a)(2)(A), (a)(2)(B)(i).

The claimed transfer of the sum of $40,355.12, however, creates a problem. As noted earlier, there is no documentary evidence in this record to show a transfer by Mrs. Handy to Mark Handy of this sum. On the contrary, the only evidence in this record is Exhibit 3 which does not show a withdrawal, but to the contrary, shows a deposit into an account in which Mrs. Handy still has a beneficial interest and the Exhibit indicates that the interest of Mark Handy in this account is merely a bare legal interest and he is holding these funds for the benefit of others named in the account and described earlier. Accordingly, this Court is satisfied that while this record clearly supports a claim for the transfer of $5,000, it does not support a claim for the transfer of $40,355.12.

A separate final judgment shall be entered in accordance with the foregoing.